**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt.loker@loker.law
Scott M. Plescia (349319)
scott.plescia@loker.law
132 Bridge Street
Arroyo Grande, CA 93420
Telephone: (805) 994-0177

*Attorneys for Plaintiff,*
Johanna Sanchez

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHANNA SANCHEZ,** <br><br> Plaintiff, <br><br> v. <br><br> **SYNCHRONY BANK; AND, EXPERIAN INFORMATION SOLUTIONS, INC.,** <br><br> Defendants. | **Case No.:** <br><br> **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** <br><br> I.  **FAIR CREDIT REPORTING ACT;** <br><br> II. **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT; AND,** <br><br> III. **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT** <br><br> **JURY TRIAL DEMANDED** |

| CASE NO.: | *Sanchez v. Synchrony Bank, et al* |
|---|---|
| **COMPLAINT** | |

# INTRODUCTION

1. The United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

3. JOHANNA SANCHEZ ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of SYNCHRONY BANK ("Synchrony"); and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), with regard the reporting and collection of an inaccurate account, which caused Plaintiff damages.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

7. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of a Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

**JURISDICTION AND VENUE**

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. §§ 1681 et seq.; and, 28 U.S.C. § 1367 for supplemental state claims.

10. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C §§ 1681 et seq. ("FCRA"); (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, et seq. ("CCCRAA"); and, (iii) the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788, et seq. ("RFDCPA").

11. Because Defendants conducted business within the State of California, personal jurisdiction is established.

12. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

13. Plaintiff is a natural person who resides in the County of Los Angeles, State of California, from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff.

14. Plaintiff is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

15. Plaintiff is informed and believes, and thereon alleges, that Defendants, in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

16. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

17. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c); and, Cal. Civ. Code § 1785.3(c).

18. Synchrony is a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

19. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f); and, each a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

20. Experian is also a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

21. Synchrony is a corporation located in the State of Utah.

22. Experian is a corporation located in the State of California.

23. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

24. Plaintiff is an individual residing within the State of California.

25. On or about July 6, 2023, Plaintiff opened a Synchrony Home credit card account for the sole purpose of purchasing a mattress from Bedder Mattress.

26. The purchase was in the amount of approximately $1,210.00, which Plaintiff promptly paid off in five payments.

27. Once the purchase was paid in full, Plaintiff no longer made use of the account and kept the physical credit card in her desk at her home.

28. To Plaintiff's surprise, in or around November 2024, Plaintiff received a billing statement in the mail from Synchrony Home in the amount of $7,846.27 for a transaction from Bedder Mattress on or around October 20, 2024.

29. Plaintiff was confused, given that the mattress she purchased from Bedder Mattress was paid in full, and she otherwise had no use of the account.

30. The following day, Plaintiff went into Bedder Mattress's physical location in Santa Clarita to dispute the charge.

31. When Plaintiff requested a copy of the invoice from the transaction, a Bedder Mattress employee checked their system and indicated that there were no purchases made in Plaintiff's name. The employee confirmed that Plaintiff had not been into the store on the date of the transaction and advised her to report a fraud claim.

32. Shortly thereafter, Plaintiff contacted Synchrony by telephone to dispute the charge. Plaintiff spoke with a Senior Specialist, Isaiah Derricks, who insisted that Plaintiff's signature was on the invoice from the October 20, 2024 purchase.

33. Plaintiff continued to receive billing statements in the mail and contacted Synchrony numerous times to dispute the fraudulent debt.

34. In or around January 8, 2025, Plaintiff received a letter in the mail from Synchrony with the results of her dispute. Synchrony denied Plaintiff's claim after determining that Plaintiff "authorized, participated in, or benefited from the purchase."

35. In or around February 5, 2025, Plaintiff received another letter, indicating that Synchrony's Fraud Team reviewed her claim and was denying it because the purchased items were shipped to Plaintiff's address.

36. Plaintiff was shocked, confused, and frustrated, given that none of Synchrony's purported findings were accurate. It was abundantly clear to Plaintiff that she was a victim of identity theft.

37. On or about February 22, 2025, Plaintiff submitted a complaint against Synchrony to the Consumer Financial Protection Bureau.

38. On or about February 26, 2025, Plaintiff filed a police report with the County of Los Angeles Sheriff's Department and reported that an unknown suspect made unauthorized charges to her credit card in the amount of $7,846.27.

39. On or about February 26, 2025, Plaintiff received another letter from Synchrony, indicating that while her claim remained pending, Synchrony canceled her card, temporarily credited the disputed amount, and notified the major credit bureaus, including Experian.

40. In or around March 2025, Plaintiff submitted direct disputes with the major credit bureaus, including Experian.

41. In the meantime, to Plaintiff's disappointment, she received another letter from Synchrony on or about March 20, 2025, again indicating that her claim was denied because the purchased items were shipped to her address and she "authorized, participated in, or benefited from the purchase." The letter further indicated that Synchrony reversed the transaction credit along with associated interest and fee credits.

42. On or about March 25, 2025, Plaintiff received dispute results from Experian, verifying the fraudulent debt as accurate.

43. On or about April 14, 2025, Plaintiff filed an Identity Theft Report with the Federal Trade Commission, detailing the events that have transpired and the actions she has taken to date.

44. Plaintiff relentlessly continued disputing the fraudulent debt with Synchrony and the credit bureaus.

45. On or about April 17, 2025, Plaintiff received another letter from Synchrony that was nearly identical to the one she received on or about March 20, 2025.

46. On or about April 25, 2025, Plaintiff again spoke telephonically with Synchrony's Senior Specialist, Isaiah Derricks, to dispute the fraudulent debt.

47. On or about April 28, 2025, Plaintiff received another letter from Synchrony, indicating that while Plaintiff's claim was pending, Synchrony closed the account, directed the credit bureaus to remove the account from her credit report, initiated an investigation, and flagged Plaintiff's information in their system.

48. Once again, Plaintiff was devastated to receive another letter containing Synchrony's dispute results on or about May 7, 2025, inextricably finding that Plaintiff "authorized, participated in, or benefited from the purchase," payments have been made by her on the account, and the account had been open for more than 12 months with statements sent to her. The letter further indicated that Synchrony reversed the transaction credit along with associated interest and fee credits.

49. Plaintiff was exasperated, but she continued her diligent efforts to dispute the fraudulent debt. She received additional letters from Synchrony on May 11, 2025, May 12, 2025, May 13, 2025, and May 14, 2025 indicating that her claim was pending.

50. On or around May 21, 2025, Plaintiff received another disappointing letter from Synchrony containing dispute results, including a denial of her claim; however, no specific reason for the denial was indicated.

51. On or about June 5, 2025, Plaintiff received detailed correspondence from Synchrony, written by the Senior Specialist, Isaiah Derricks, with whom she previously spoke.

52. The letter contained a denial of Plaintiff's fraud claim, again reasoning that Plaintiff "authorized, participated in, or benefited from the purchase," payments had been made by her on the account, the account had been open for more than 12 months with statements sent to her, and the charges were made by an authorized user or Plaintiff permitted a third party to use/open the account.

53. The most shocking portion of the correspondence came from Isaiah Derricks, and the attachments he included with the letter.

54. For the first time, Plaintiff was provided with the documentation pertaining to the purchase of $7,846.27 from Bedder Mattress, and it was immediately apparent to Plaintiff that the purchase was fraudulent.

55. Plaintiff compared the purchase documentation with the store's website and quickly found that the purported purchase was for items that Bedder Mattress did not even sell, including items from a brand that does not even exist.

56. Upon review of the documentation and Bedder Mattress's website, Plaintiff found that the brand "Burkhausly" is nowhere to be found on Bedder Mattress's website, nor does the brand exist anywhere for that matter.

57. Further, Plaintiff noted that Bedder Mattress only sells mattresses, bed frames, and bedding; however, the invoice included itemized purchases for a dining table, dining chairs, and other living room furniture that Bedder Mattress does not sell.

58. Additionally, Plaintiff quickly observed that the signature on the purchase documents is not her signature, which Synchrony could have quickly confirmed since it had a copy of her driver's license with her valid signature.

59. Plaintiff was floored at the egregious fraud attached to her name, and even more egregious "investigation" performed by Synchrony.

60. As a result of the fraudulent debt in the amount of $7,846.27 being reported on Plaintiff's credit report, Plaintiff's revolving credit utilization was significantly and artificially increased. This negatively impacted her credit score and credit profile.

61. Additionally, the presence of this fabricated debt gave the impression that Plaintiff was in serious financial distress and failed to meet her credit obligations. In truth, Plaintiff has consistently maintained responsible credit behavior.

62. The inaccurate reporting mischaracterized Plaintiff as financially irresponsible, leading to reputational harm, emotional distress, and a diminished ability to access credit and financial opportunities.

63. Through this conduct, Synchrony violated 15 U.S.C. § 1692e(10) by using false, deceptive, and misleading representations in connection with the collection of Plaintiff's alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

64. Through this conduct, Synchrony violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the inaccurate debt in connection with the collection of the inaccurate debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

65. Through this conduct, Synchrony violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the inaccurate debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

66. Through this conduct, Synchrony violated 15 U.S.C. § 1692f(1) by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

67. Experian was then required to conduct their own reasonable reinvestigation into the account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

68. Synchrony was also required to conduct a reasonable reinvestigation into the account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

69. Synchrony failed to review all relevant information provided by Plaintiff in the dispute to the Credit Bureaus, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

70. Due to Synchrony's failure to reasonably investigate, Synchrony further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

71. By inaccurately reporting account information after notice and confirmation of its errors, Synchrony failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

72. To date, Synchrony's inaccurate credit reporting remains on Plaintiff's Experian Credit Report.

73. Synchrony submits inaccurate credit information regarding Plaintiff to the Credit Bureaus every thirty days.

74. Experian did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

75. Defendants' investigations were unreasonable.

76. More specifically, Defendants should have discovered from their own records, including Plaintiff's formal dispute, that the information being reported was inaccurate and materially misleading since Plaintiff never made the purchase of the items at issue herein, nor did she receive the items that were purportedly purchased.

77. By inaccurately reporting account information after notice and confirmation of its errors, Synchrony failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

78. Through this conduct, Synchrony violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that Synchrony knew or should know was inaccurate.

79. Experian also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

80. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's dispute with Experian were fruitless.

81. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

82. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

83. Defendants' failure to correct the previously admitted inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

84. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

85. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

86. Throughout this ordeal, Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large debt mischaracterizes Plaintiff as someone that financially overextends herself and harms Plaintiff's credit score.

87. Plaintiff has been unable to obtain the credit benefits she should have earned by her stellar payment history.

88. While Plaintiff was thorough in Plaintiff's disputes at all times, each Defendant merely responded with form letters that failed to take into account any of the specifics identified in Plaintiff's disputes.

89. Despite Plaintiff's repeated attempts, Defendants continue to report an invalid debt to Plaintiff's credit report.

90. Plaintiff has spent countless hours disputing this inaccurate information with Defendants in an attempt to provide any and all information needed for the investigations.

91. Plaintiff is not able to calculate the total pecuniary loss at this time but will utilize the services of an economist.

92. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

93. Similarly, Experian also received documents in connection with Plaintiff's dispute that directly contradicted the inaccurate credit reporting.

94. These documents should have caused Experian to remove the inaccurate information from Plaintiff's credit report.

95. By intentionally reporting continuing obligations, Experian acted in conscious disregard for Plaintiff's rights.

96. To report an ongoing obligation despite the invalid nature of this account shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

97. Since Plaintiff's efforts to be absolved of the invalid debt were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

# CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §§ 1681-1681X (FCRA)

### [AGAINST ALL DEFENDANTS]

98. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

100. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

101. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## COUNT II

## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

### CAL. CIV. CODE § 1785.1, ET SEQ.

### [AGAINST SYNCHRONY]

102. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

103. The foregoing acts and omissions constitute numerous and multiple violations

of the California Consumer Credit Reporting Agencies Act.

104. In the regular course of its business operations, Synchrony routinely furnishes information to credit reporting agencies pertaining to transactions between Synchrony and Synchrony's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

105. Because Synchrony is a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Synchrony is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

106. Since Synchrony received all documents required to determine the inaccuracy of Synchrony's reporting, Synchrony should have known to update said reporting.

107. Synchrony also should have determined that Synchrony's reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

## COUNT III
## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
## CAL. CIV. CODE §§ 1788-1788.32 (RFDCPA)
## [AGAINST SYNCHRONY]

108. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

109. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

110. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against each named Defendant individually;

- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against each named Defendant individually;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);
- Punitive damages according to proof as to the FCRA; and CCCRAA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a), against each named Defendant individually;
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against each named Defendant individually;
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c), against each named Defendant individually;
- An injunction preliminarily and permanently enjoining Defendant from engaging in the unlawful debt collection practices stated herein;
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

111. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 25, 2025                                        Respectfully submitted,

                                                            **LOKER LAW, APC**

                                                    By: ___/s/ Scott M. Plescia___
                                                            Scott M. Plescia, Esq.
                                                            Attorney For Plaintiff

CASE NO.:                           16 OF 16                *Sanchez v. Synchrony Bank, et al*
                                    **COMPLAINT**